F. A. SHEPHERD and others, *ex parte*.

April Term, 1876.

PARTNERSHIP—EFFECT OF DISSOLUTION—RIGHTS OF PARTNERS.—Upon the dissolution of a partnership, each partner is entitled to have the business wound up as speedily as possible, the assets applied to the payment of the partnership debts, and the partners equalized as between themselves as of the date of the dissolution, and to this end to have the dividends as made applied to the debts of the partners. And, therefore, a partner who has drawn out more than he put in is not entitled to receive any thing until his copartners, who have drawn out less than they put in, are reimbursed their excess of advances, with interest.

THE CHANCELLOR:— This is an agreed case, submitted

under the statute. On December 1, 1872, F. A. Shepherd, H. V. Hooper, W. D. Mitchell, and J. B. Richardson entered into partnership in the wholesale shoe business, at Nashville, under the style of Shepherd, Hooper & Co. The terms of partnership were by parol, and are now agreed to have been as follows: The partnership was to continue until January 1, 1876; each partner was to pay into the firm whatever money he could then raise, and that might come into his possession during the copartnership; all such moneys to be placed to the credit of the respective capital-stock accounts, to bear interest at the rate of eight per cent per annum until returned to the contributing partner. Any partner might draw from the firm whatever might be necessary for the support of himself and family, the same to be charged to him, and to bear eight per cent interest per annum until settled.

The respective interests of the partners in the profit and loss of the business, it was agreed, should be as follows: F. A. Shepherd, 28 per cent; H. V. Hooper, 28 per cent; W. H. Mitchell, 24 per cent; J. B. Richardson, 20 per cent.

At the termination of the partnership, on January 1, 1876, the books show the following condensed statement:

### ASSETS.

| | |
|---|---:|
| Cash. | $ 9,179 88 |
| State and county warrants | 647 17 |
| Merchandise, at cash valuation | 29,981 53 |
| Notes, accounts, etc | 117,155 09 |
| | $157,213 67 |

Partners' accounts for money, etc., withdrawn —

| | | |
|---|---:|---:|
| F. A. Shepherd | $21,916 92 | |
| H. V. Hooper | 14,532 11 | |
| W. H. Mitchell | 9,882 47 | |
| J. B. Richardson | 5,081 54— | 51,413 04 |
| | | $208,626 71 |

LIABILITIES.

| | | | |
|---|---|---|---:|
| Debts due, sundries............................................................... | | | $ 62,890 01 |
| F. A. Shepherd —stock account...................... ........ ..... ........ | | | 56,054 96 |
| H. V. Hooper, | " | ............................................... | 38,281 00 |
| W. H. Mitchell, | " | ............................................... | 5,331 45 |
| J. B. Richardson, | " | ............................................... | 3,299 32 |
| Profit and loss (apparent)........................................................ | | | 42,769 97 |
| | | | $208,626 71 |

" The matter in dispute and for the decision of the chancellor," says the agreed statement, " is, What would be a proper disposition of the assets, as collected, after the debts of the firm (not including the stock accounts) are all paid? Shall the amount withdrawn by each member of the firm be paid out of his stock account or his share of the profits?"

The closing query is a little obscure, but, I presume, was intended to direct the attention to the point of difficulty between the debtor and creditor partners. The meaning, I take it, is, Shall each partner be reimbursed his stock advanced, leaving his debt to be paid out of the apparent profits; or shall the dividends, as made on the stock, be applied to the payment of the debt of the partner who is entitled to it? Thus put, it is difficult to see how there can be any other than one answer. For, the debt of one of the partners, who has withdrawn more than he advanced, is $9,882.47, to pay which, after reimbursing the stock account, would require the collection of the whole of the (apparent) profit of $42,769.77 ; and if any fair proportion of it — say one-third, one-fourth, or even one-fifth — were lost or not realized, the share of the debtor partner in the profits would not pay his debt.

But the effect of a dissolution of a partnership is to entitle each partner to have the business wound up as speedily as possible, and the assets appropriated in a certain settled order. In the first place, each partner has a lien

upon the assets for the payment of the firm debts. In the next place, the partners must be equalized as between themselves, and the capital stock returned in the mode which will most speedily bring about perfect equality, and, to this end, to a settlement of the account of each partner with the firm. There can be no partnership settlement without a general partnership account to ascertain the profit or loss, and then a settlement of each partner with the firm, in order to ascertain how that profit or loss is to be shared. *Philips* v. *Turner*, 2 Dev. & B. Eq. 125 ; *Hicks* v. *Chadwell*, 1 Tenn. Ch. 256. And it is obvious that the account of each individual member with the partnership cannot be complete without bringing into it, not only the stock account, but the individual indebtedness of that member. *Phelan* v. *Hutchison*, Phill. Eq. 116. Such accounting should be as at the date of the dissolution, — not postponed until the assets are realized, which may not be for years. *Stoughton* v. *Lynch*, 2 Johns. Ch. 219.

A general partnership account in this case, upon the facts agreed, as of January 1, 1876, would show an apparent profit, in bills, notes, accounts, etc., not realizable in full for years, of $42,769.77, to be eventually divided between the partners, in the proportion agreed upon in the partnership contract. An individual account with each of the partners would show that two of them were indebted to the firm, and that the firm was largely indebted to the other two. The individual debts and credits, each carrying interest, as per agreement, at the rate of eight per cent per annum, the one may be set off against the other, as of that date. In this view, the real *status* of the firm and its members is this :

ASSETS.

| | | | |
|---|---|---|---|
| Cash, warrants, merchandise, notes, etc.... | | | $157,213 67 |
| W. H. Mitchell, bal. debt......................$9,882 49 — $5,331 45 = | | | 4,551 02 |
| J. W. Richardson, "  ....................... 5,081 54 — 3,299 32 = | | | 1,782 22 |
| | | | $163,546 91 |

LIABILITIES.

| | | | |
|---|---|---|---|
| Debts due, sundries........... | | $62,890 01 | |
| F. A. Shepherd, bal. credit, $56,054 96 — $21,916 92 = | | 34,138 04 | |
| H. V. Hooper, " 38,281 00 — 14,532 11 = | | 23,748 89 | |
| Profit (apparent) ............. | | 42,769 97 | |
| | | | $163,546 91 |

The law would settle the rights of the parties upon this basis, under the facts agreed upon. And on this form of stating the accounts, the answer to the point submitted is clear. The assets as collected, after paying debts due to third persons, would be applied to returning to the partners in whose favor balances are found such balances, with interest. Subsequent collections would be profits, to be divided between all the partners, in the proportion fixed by the terms of the partnership. See *Woods* v. *Scoles*, L. R. 1 Ch. App. 369.

I am of opinion, therefore, stating the conclusions in the general terms of the submission, that a proper distribution of the firm assets as collected, after the payment of debts to third persons, would be to apply them in equalizing the partners in their stock accounts, and that the amounts withdrawn by each member of the firm should be paid out of his stock account, not out of his share of profits. Stated more specifically, I am of opinion that a partner who has drawn out more than he put in is not entitled to receive any thing until his copartners who have drawn less than they put in shall be fully reimbursed their advances, with interest, the stock account of each of the partners being set off as extinguished *pro tanto* by his indebtedness.